AT THE

## NOVEMBER SESSION 1865, IN BOSTON.

PRESENT :

Hon. GEORGE T. BIGELOW, Chief Justice.
Hon. CHARLES A. DEWEY,
Hon. EBENEZER R. HOAR,
Hon. REUBEN A. CHAPMAN, } Justices.
Hon. JAMES D. COLT,

# CRIMINAL CASES.

## Commonwealth vs. Francis O. J. Smith.

Under Gen. Sts. c. 131, § 38, a commissioner specially appointed by a court in another state, under authority of the laws of that state, to take a deposition in this commonwealth, to be used in a suit pending in that court, is appointed under the authority of that state, and is qualified to administer an oath and to require the attendance of a witness in this commonwealth.

An indictment for subornation of perjury in a deposition to be used in a civil action pending in another state, which alleges that on a certain day " a certain issue was then and there duly joined in the said suit" and that on the same day " a commission was duly issued " to take the deposition, sufficiently avers that issue was duly joined in the suit before the commission issued, and if, after a verdict of guilty, it appears by the bill of exceptions that evidence was introduced to show the pendency of the action, as alleged in the indictment, it will be presumed, in the absence of anything to show the contrary, that the evidence showed the pendency of an action in which issue had been duly joined.

If a commission duly issued in another state to take a deposition in this commonwealth

directs the oath to be administered by causing the witness to lay his hand upon and kiss the gospels, the oath may be administered in that form, although the Gen. Sts. c. 131, § 8, prescribe a different form to be used here.

A combination to induce a witness to go from one state to another to testify, by means of pecuniary inducements, is not a conspiracy, unless the design is to induce him to testify falsely; and therefore the acts and declarations of one of the persons so combining are not admissible in evidence against the others.

If it is averred in an indictment for subornation of perjury that it became a material question in the trial of the cause in which the perjury was alleged to have been committed whether the wife of the person alleged to have committed it had or had not, previously to his marriage with her, been living with the defendant as his mistress, and that the witness was asked, " Had she not been living with the defendant before you married her," to which he replied that she had not, evidence is competent to prove, for the purpose of establishing the perjury, that in fact she had lived with the defendant as his mistress.

Under the statutes of this commonwealth, one may be convicted of subornation of perjury who procures the commission of the perjury here through the agency of another guilty party, without the limits of Massachusetts.

INDICTMENT for subornation of perjury. The indictment alleged, at great length, that on the 5th of December 1861 a cause was pending in the superior court of the city of New York in the state of New York in favor of Daniel H. Craig against the defendant, in which Craig sought to recover damages of the defendant for a libel in charging that Craig had cut the telegraph wires on the arrival of a foreign steamer to give a certain despatch the advantage of time over other despatches, and that he had a woman for an accomplice, and the defendant in his answer admitted the publication of the charge and alleged the truth in justification ; " and a certain issue was then and there duly joined in the said suit and proceeding in a court of justice between the said Craig and the said Smith ; " " that on the said fifth day of December in the said cause then and there so pending as aforesaid, a commission was duly issued out of the said superior court," directed to Edward Bangs of Boston, Massachusetts, appointing him commissioner to take the deposition of Charles C. Northrup as a witness in said cause, upon certain additional cross-interrogatories propounded to Northrup by Craig, and in pursuance thereof Northrup afterwards appeared and was sworn by said Bangs, who had authority to administer the oath, and took the oath by laying his hand upon and kissing the gospels ; and certain questions became material in the said cause, and to the said issue between the said parties, and to be

deposed to by the said witness, in answer to the said additional cross-interrogatories, one of which was whether or not the wife of said Northrup had been living with Smith as his mistress before Northrup married her; and in the eighteenth cross-interrogatory the witness was interrogated, [amongst other things specified in the indictment, and hereinafter set forth,] " What was the name of your wife before you married her ?   Had she not been living with the defendant (meaning said Smith) before you married her ? (meaning living with said Smith as his mistress :) " to which Northrup answered, " Lucy Peabody De Maine. She had not. (meaning that the said wife of said Northrup had not been living with the said defendant Smith as his mistress before said Northrup married her.)   I answer the three last questions emphatically, No."   That in truth and in fact, as Northrup well knew, his wife, before her marriage to him, had been living with the defendant as his mistress ; that Northrup accordingly committed perjury ; and that the defendant procured him to do so, at said Boston.

At the trial in the superior court, before *Putnam*, J., evidence was introduced tending to show the pendency of an action in the superior court of the city of New York, as alleged in the indictment.   A commission was then offered in evidence issued by said court to Edward Bangs to take the deposition of Charles C. Northrup in answer to additional cross-interrogatories propounded by Craig, and annexed to the commission.   The instructions annexed to this commission directed that the oath to the witness should be administered by the witness laying his hand upon and kissing the gospels.   The eighteenth additional cross-interrogatory was as follows : " What was the full name of your wife before you married her ?   Had she been previously married ?   Had she one or two children when you married her ? Had she not been living with the defendant before you married her ?   Did the defendant not give you a sum of money or some telegraph stock or some other consideration, to induce you to marry your wife or to take one of her children ?   Does he not now assist to support these children ? "   To this interrogatory Northrup answered as follows : " Lucy Peabody De Maine,

She had been previously married; at least, she was reported to be a widow, and I presume was. She had then two children. She had not. He did not. He does not. I answer the three last questions emphatically, No." The defendant objected to the admission of this commission, and of the interrogatories and answers, because the commission did not authorize Bangs to administer a binding oath; but the objection was overruled.

For the purpose of showing perjury by Northrup in his answers to the above interrogatory, he and his wife, being called by the Commonwealth, were allowed to testify, against the defendant's objection, that for a series of years before their marriage she had been the mistress of the defendant and that he had supported her. Charles C. Northrup also testified that when the question was put to him he understood it to be an inquiry whether she was living with Smith as his mistress, and answered the question, so understanding it. The judge on this point instructed the jury that if Northrup so understood the question, and the phrase might from its connection be fairly so understood by him, and he so understanding it answered it as he did, perjury might be committed by him in such answer.

Northrup also testified that in the spring of 1863 he was in the army at Camp Butler in Chicago, Illinois, and one Rowe visited him there, as agent of Craig, to induce him to come to Boston to testify before the grand jury against Smith; that he came to Boston accordingly in June 1863; that Rowe and Craig both promised that Craig would help him in securing a good position in the army, and they both paid him money. The defendant, contending that this evidence showed a conspiracy between Craig, Rowe and Northrup in this prosecution against him, offered in evidence two letters written by Craig to Rowe just before Northrup came to Boston in June 1863, respecting the procurement of Northrup as a witness, and his testimony. There was no evidence that Northrup had seen these letters or knew their contents; and the judge excluded them.

Northrup also testified that in testifying falsely to the matters above set forth he was influenced by two letters written to his wife by the defendant, and by conversations with his wife in

reference to the subject matter of the letters. These letters were dated on December 31st 1861 and January 5th 1862 respectively. The first was sent to her in Portland, from Maine or New York. The second was dated in Portland, Maine, and the evidence was conflicting as to whether or not it was sent to her from Massachusetts. There was evidence tending to show that before Northrup gave his deposition she showed these letters to him, in pursuance of a request made to her by the defendant before they were written. She testified that this request was made to her in Boston, and that the defendant then told her that he wished her to get her husband to testify in a certain way, and promised to write her a letter stating how he was to answer the interrogatories, which letter and interrogatories she was to show to her husband. The defendant contended that he could not be found guilty upon this evidence; but the judge ruled that if the defendant employed her to solicit her husband to commit the perjury, and if he agreed to send to her a statement of what he wished her husband to testify to, which she was to read over to him, and the statement and copy of the interrogatories were accordingly sent to her, the contents of which she communicated to her husband in Boston, by which he was induced to testify falsely, then the defendant might be convicted under this indictment, although the letters and papers were written in Portland or New York, and forwarded to her by mail or otherwise.

The defendant then requested the judge to instruct the jury as follows :

" 1. The commission to Bangs did not authorize him to administer to Northrup a binding oath in this state, and false statements by Northrup made upon an oath administered by Bangs in his capacity of commissioner, deriving his authority to administer such oath from that commission alone, would not be perjury.

" 2. If the jury find that the defendant's letters of December 31st 1861 and of January 5th 1862 were written without the jurisdiction of this state, and were not brought to this state by the defendant himself, but were communicated to Northrup by the agency of some other party, and the defendant did no other

act to induce Northrup to commit the perjury alleged, he cannot be convicted upon this indictment, even though the contents of such letters were made known to Northrup and he was influenced by them to testify falsely.

" 3. If letters written by the defendant and representations and promises made by him for the purpose of inducing Northrup to testify falsely were not communicated by the defendant himself to Northrup, but were communicated to him by his wife when the defendant was not present personally, and Northrup was influenced by such letters, representations and promises alone, thus made known to him, to testify falsely, the defendant cannot be convicted upon this indictment.

" 4. To authorize a conviction of the defendant upon this indictment, the jury must find that the defendant was present, counselling and procuring the perjury by Northrup."

The judge declined to modify his former instructions, so as to make them conform to these requests, and the jury returned a verdict of guilty. The defendant alleged exceptions.

*H. W. Paine*, ( *T. M. Hayes* with him,) for the defendant. The admission of the commission was erroneous. No officer can administer an oath but by authority of the state in which this official act is done. *Jackson* v. *Humphrey*, 1 Johns. 498. There is no statute expressly authorizing a commissioner appointed by a court of another state to administer an oath here. The Gen. Sts. *c.* 131, § 8, are restricted to commissioners appointed by the executive. In this case, it is not averred or proved that issue had been joined when this commission was issued. The instructions accompanying the commission directed the commissioner to disregard the injunctions of Gen. Sts. *c.* 131, § 8, as to the form of administering oaths. The letters of Craig should have been submitted to the jury, as there was evidence from which they would have been warranted in finding a conspiracy, and the act of one conspirator is evidence against the rest. 1 Greenl. Ev. § 111.

The evidence that Mrs. Northrup had lived with the defendant as his mistress was incompetent. The question actually put to Northrup in his deposition was simply, whether she had

not been living with the defendant before Northrup married her. It is nowhere averred in the indictment that this question was material to the cause. The significance of the question which was put clearly cannot be varied or added to by the innuendo. The indictment charges that it became a material question in the cause, and to the issue, and to be deposed to by the witness, whether she had lived with the defendant as his mistress. But this question was not put to the witness. The question which is alleged to have been material was not put; and the question which was put is not alleged to have been material. What the question meant which was put is a question of law. The judge allowed Northrup to testify what he understood that it meant. But is Smith to be affected by his understanding of what the question meant? Smith may have understood it differently. The relations in which a woman may live with a man are various. It may be as his wife or housekeeper or daughter or servant or boarder or mistress. Suppose that this question had been answered " yes ; " could he have been convicted of perjury if it appeared that she had lived with him as a housekeeper, but not as a mistress ? The judge did not undertake to interpret this question at all, but submitted the case to the jury upon Northrup's interpretation of it.

The instructions to the jury were erroneous. The indictment charges the defendant with subornation of perjury; not with being an accessory before the fact to a perjury. Subornation of perjury is a distinct and independent offence, both at common law and by Gen. Sts. *c.* 163, § 3 ; and there may be accessories before the fact to this offence. The defendant is charged with having committed this offence at Boston. Upon the facts mentioned in the instructions to the jury, Mrs. Northrup was guilty of subornation of perjury and the defendant was accessory before the fact thereto. If one procures an offence to be committed by an innocent agent, he is regarded as constructively present at the commission of the offence, and may be convicted as a principal. But if he procures the offence to be committed by a guilty agent, he is an accessory before the fact. *People* v. *Adams,* 3 Denio, 190; *S. C.* 1 Comst. 173. *State* v. *Chapin,* 17

Arkansas, 561. *State* v *Moore*, 6 Fost. (N. H.) 448. *State* v *Ricker*, 29 Maine, 84. *Commonwealth* v. *Douglass*, 5 Met. 245. 1 Russ. on Crimes, 32. *The King* v. *Reilly*, 1 Leach, (4th ed.) 455. 2 Stark. Ev. (4th Amer. ed.) 627. To constitute suborna- tion of perjury, the party must be present, actually or con- structively ; he must act directly on the guilty party, and not through the intervention of another guilty party. But in this case, the instructions given imply Mrs. Northrup's guilt, and allowed the defendant to be found guilty even though his acts were not done in this commonwealth.

*Reed*, A. G., for the Commonwealth.

HOAR, J. The questions raised by the bill of exceptions are numerous, and it will be necessary to consider them in detail.

The defendant was indicted for wilfully and corruptly pro- curing one Charles C. Northrup to commit the crime of perjury. The perjury alleged was in the false answers given by Northrup in a deposition taken in Boston, under a commission from the superior court of the city of New York, and to be used in the trial of a cause depending and at issue in that court. The com- mission was directed to a commissioner specially named, who was not shown to have any other authority to execute it than that derived from the appointment of the court.

The first exception is to the admission of the deposition in evidence, because the commission did not authorize the commis- sioner to administer a binding oath to said Northrup in this commonwealth. And in support of this exception several dis- tinct points are taken.

1. It is urged that the commissioner was not authorized by any law of this commonwealth to take the deposition. The provision of law for the taking of depositions within this state, to be used in a cause pending in a court in any other state or government, is found in Gen. Sts. *c.* 131, § 38. It provides that such depositions " may be taken before a justice of the peace in this state, or before commissioners appointed under the author- ity of the state or government in which the suit is pending." We think that under this section the commissioner had author- ity to administer an oath ; and that, within its meaning, he was

appointed under the authority of the state of New York. The statute may have had more special reference to commissioners appointed by the executive, for the purpose of administering oaths and taking depositions generally in the state for which they are designated; but it will include as well commissioners appointed under the judicial authority of the state as those appointed by the executive. Our own statute respecting depositions to be taken in other states or countries, to be used in this commonwealth, allows them to be taken under a commission issued by the court in which the cause is pending, to competent persons, that is, to persons not disqualified by interest or otherwise, or before commissioners appointed by the governor for that purpose. Gen. Sts. *c.* 131, § 34. And the reason of the thing is equally applicable to depositions taken in either mode under the authority of another state; which may be as efficiently exercised through the legitimate action of a court of record as by an executive appointment.

2. It is objected that it was neither averred nor proved that issue was joined in the cause depending in the superior court of New York from which the commission was sent; and that the statute of New York empowers a court of record to appoint a person to take the depositions of witnesses out of the state, only after issue joined in a cause. But on looking at the indictment we find it is distinctly averred that on the day named a cause was depending, and that an issue was then and there joined in the cause between the parties; and that on the same day "in the said cause then and there so depending as aforesaid a commission was duly issued." This is a sufficient allegation; and there is nothing in the exceptions to show that it was not supported by proof. Evidence was offered "to show the pendency of an action as alleged in the indictment." We must presume that this evidence showed an action in which issue was duly joined. Nothing to the contrary is stated, and there is no fact reported upon which the objection can be sustained.

3. It is then argued that the instructions accompanying the commission directed a particular form of administering the oath,

namely, by causing the witness to lay his hand upon and kiss the gospels; and that this form of administering the oath is not the lawful form in this commonwealth, unless in cases where it is found to be more binding upon the conscience of the witness than the form directed by our statute. By Gen. Sts. *c.* 131, § 8, it is provided that "the usual mode of administering oaths now practised in this state, with the ceremony of holding up the hand, shall be observed in all cases in which an oath may be administered by law," except in cases of conscientious scruples, or where the court or magistrate is satisfied that some other mode is more solemn or obligatory on the person to be sworn than holding up the hand. It is undoubtedly important and desirable that some proper and solemn form of administering oaths should be adopted and observed, and the injunction of the statute is to be regarded for this purpose. But the holding up the hand is a ceremony attending the taking of the oath, and is not to be regarded as of the essence of the oath itself. If this were not so, a person without hands and having no conscientious scruples or opinions in regard to the form could not be legally sworn to testify in this commonwealth. The provision as to the form is to be considered as directory only; and the oath administered by the commissioner was valid and effectual to oblige the witness to testify.

The next exception to be considered is that taken to the exclusion of the letters written by Craig to Rowe, which were offered in evidence on the ground that there was proof of a conspiracy between Craig, Rowe and Northrup, and that therefore the acts and declarations of either of them were admissible against the others. The rule of evidence for which the defendant contends is well established, but we do not think the facts proved were sufficient to show a conspiracy, and so the case is not brought within the rule. A conspiracy must be to do an unlawful or criminal act. The proof only tended to show that Craig and Rowe had acted in concert to induce Northrup to come into this commonwealth to testify, and had offered him pecuniary inducements to do so. But this is not criminal or illegal. It does not appear that they tried to induce him to

testify to anything which was not true. The ruling at the trial was therefore right.

The next point taken arises upon the admission of evidence that the wife of the witness Northrup, before her marriage with him, lived with the defendant as his mistress. The objection to this evidence was that it was irrelevant, and tended to prove no allegation in the indictment, but only matters mentioned in the innuendoes therein.

It is averred in the indictment that the question became material in the cause and in the issue between the parties, whether the wife of the said Northrup had been living with the defendant Smith as his mistress, before the said Northrup married her. It is then alleged that in the eighteenth additional cross-interrogatory propounded to the witness he was interrogated as follows : " Had she not been living with the defendant (meaning said Smith) before you married her ? " (meaning living with said Smith as his mistress,) and· that to this interrogatory the witness falsely, wilfully and corruptly answered that " she had not," and " No." The point upon which the defendant relies is, that the material question was whether she had lived with him as his mistress; that the interrogatory propounded was whether she had lived with him; that the question averred to be material was not asked, and the question asked is not averred to be material.

The crime of perjury is the taking of a wilful false oath, by one who, being lawfully required to depose the truth in any judicial proceeding, swears absolutely in a matter material to the point in question. The testimony must not only be wilfully false, but it must be material to the issue. The prosecutor must prove that it is thus material ; and it is also necessary that it should be alleged in the indictment that the matter sworn to was material, or that the facts set forth as sworn to, and upon which the perjury is assigned, should be sufficient in themselves to establish the materiality. *The King* v. *Nicholl,* 1 B. & Ad. 21. *Commonwealth* v. *Pollard,* 12 Met. 225, and cases there cited. But it is not essential that the interrogatory propounded to the witness should be set forth in the indictment, unless it is

necessary to make the answer which he gives intelligible. It is not even requisite that any specific interrogatory should have been put to him, since the perjury may be committed in the course of his own relation of the facts. *Commonwealth* v. *Knight*, 12 Mass. 273. And we think the defect in the defendant's argument upon this point is, that it confounds the question at issue with the interrogatory put to the witness. The usual form in indictments for perjury is to aver that " it then and there became and was a material question upon the issue aforesaid." But the word " question " there means " subject of inquiry." If the indictment sets out a material subject of inquiry, upon which the witness was called to testify, and in answer to any question, or without any specific question, in his statements made while testifying, it shows that he gave testimony on that subject which was material, and that his testimony was wilfully false, it contains a sufficient description of the perjury. It is certainly not necessary that the interrogatory to the witness should be such that every possible answer that could be given to it would be material to the issue, in order to admit of an assignment of perjury in an answer. On the contrary, if a question is asked upon a material subject of inquiry in a cause, which, answered affirmatively, might or might not furnish material evidence, but which, answered in the negative, necessarily includes and covers something that is material, then we can have no doubt that a negative answer wilfully and falsely made is perjury. It is in the answer that the perjury is committed; and it must appear by the indictment, either by direct averment or from the matter shown on the record, that the answer was material. In the indictment before us, whether the wife of Northrup lived with Smith as his mistress before her marriage is directly averred to have been a material question upon the issue in the cause. Neither the interrogatory put to the witness nor the answer made by him is directly averred to have been material. Unless, therefore, the answer appears to have been material without such averment, the objection must prevail. We give no effect to the innuendo enlarging the meaning of the interrogatory We have only to consider whether, as it was propounded to the

witness, it allowed and received an answer wilfully false upon what appears by the indictment to have been material to the issue. And it is very clear that it did. To testify that she never lived with Smith was to testify that she never lived with him as his mistress. That the answer included more than was material makes no difference. It expressly negatived an essential part of a fact in issue which the indictment averred to be material.

To say that if the witness had answered truly, his testimony would have established no material fact, does not meet the proposition. That may be true. The interrogatory was merely whether his wife did not live with Smith before her marriage; and if he had said that she did, it would not have proved that she lived with him as his mistress, which was the fact averred to be material. If he had said that she did, and that had been untrue, there is nothing in the averments in this indictment which would show that such an answer, though wilfully false, would have been perjury. But the interrogator may not have intended, certainly he was not bound, to prove the whole of the material fact by this witness. Yet his question admitted, and the witness chose to give, an answer that was material; which did not merely avoid the material subject of inquiry, but was evidence expressly negativing the fact which it was material to establish in the cause. The evidence offered and admitted was therefore competent under the averments of the indictment.

The remaining exceptions are those taken to the instructions given to the jury at the trial, and to the refusal of the judge to give the instructions asked by the defendant. The instruction which relates to the authority of the commissioner to administer the oath has been already disposed of. The others may be considered together, and they all depend upon three propositions, on which the defendant relies :

1. That subornation of perjury is a substantive felony, and not governed by the rules which would apply to the crime of being an accessory before the fact to perjury.

2. That if the defendant sent a letter to Northrup for the purpose of inciting him to commit perjury, and thereby procured him to commit that crime, if the person by whom the letter

was sent knew and participated in the guilty purpose and pro-curement, the defendant cannot be convicted of subornation of perjury, but only of being an accessory before the fact to the felony of subornation committed by the person who carried the letter.

3. That if the defendant, when out of the jurisdiction of this commonwealth, wrote a letter to Mrs. Northrup with the intent and understanding with her that she should communicate its contents to her husband to incite and procure him to commit perjury in the Commonwealth, and she did so communicate them, and he was thereby incited to commit the perjury, the defendant could not be convicted upon this indictment.

There are undoubtedly some peculiarities respecting the crime of perjury, both at common law and as affected by statute. Thus it may be doubted whether more than one person can be charged with perjury in one indictment; or whether the pres-ence, when the false testimony is given, of a person who has counselled and procured the perjury to be committed, makes him a principal in the crime. The case in which it was held that several persons cannot be joined, appears, however, to have been a case of distinct perjuries. *Rex* v. *Philips*, 2 Stra. 921. But two persons have been joined without objection in a prose-cution for subornation of perjury. *Regina* v. *Rhodes*, 2 Ld. Raym. 886. And one defendant has been charged with perjury, and another with suborning him to commit it, in the same indict-ment. *Regina* v. *Goodfellow*, 2 Russ. on Crimes, 622, *note* o. The crime of subornation of perjury is clearly in its nature that of an accessory before the fact to the perjury. Both perjury and subornation are felonies under our statute, being punishable by imprisonment in the state prison. Gen. Sts. *c.* 163, §§ 1, 2, 3 · *c.* 168, § 1.

Whoever procures a felony to be committed, though it be by the intervention of a third person, is an accessory before the fact, for it is not necessary that there should be any direct communi-cation between the accessory and the principal. *Rex* v *Cooper* 5 C. & P. 535. Foster's Crown Law, 125. 2 Hawk. *c.* 29, §§ 1, 10 *Earl of Somerset's case*, cited in 19 Howell's State Trials, 804.

And the accessory is a felon, though his felony is different in kind from that of the principal. Foster's Crown Law, 343. So it is said to be a principle in law which can never be controverted, that he who procures a felony to be done is a felon. 1 Russ. on Crimes, 32.

We cannot see that the application of these principles is changed, when the crime of the accessory before the fact is made by statute a substantive felony. The object of making it a substantive felony may be either to provide a distinct or milder punishment upon conviction, or to authorize the indictment and conviction of the accessory where the principal has not been convicted. But whether the crime is made the subject of separate prosecution and punishment or is to be included in an indictment with the principal offence will not, in the opinion of the court, change the definition of it, or alter the facts or circumstances in which the commission of it consists. The same facts, to be averred and proved in the same way, will substantiate the crime in one case as in the other. Thus, without any special provision of statute, any one inciting or counselling a murder afterward committed would be an accessory before the fact, whether he incited or counselled the actual perpetrator directly or through the intervention of another accessory. So he that procured the commission of perjury was guilty of subornation of perjury, whether his procurement was immediate or by the instrumentality of another suborner. In either case a change in the mode of indictment would not change the proof of what constitutes the crime. The crime of inciting or counselling the murder could be committed by the same person and by the same acts, although the guilt of the accessory were made a substantive felony, to be punished without reference to the prosecution of the principal. The crime of subornation of perjury would consist in procuring perjury to be committed, directly or indirectly, as much after subornation was made a felony as before.

In construing the provisions of Gen. Sts. *c.* 168, we must have reference not only to their apparent design and meaning, but to other provisions of the body of laws, of which that chapter forms a part. The first section gives a new and technical

definition of felony, differing from that of the common law
The common law incidents of felony would generally be held
to attach to the felonies thus defined; but they would not be so
held, where such a result would conflict with other statute pro-
visions.  Thus, § 4 provides that " whoever counsels, hires or
otherwise procures a felony to be committed may be indicted
and convicted as an accessory before the fact, either with the
principal felon, or after his conviction ; or may be indicted and
convicted of a substantive felony, whether the principal felon
has or has not been convicted, or is or is not amenable to jus-
tice ; and in the last mentioned case may be punished in the
same manner as if convicted of being an accessory before the
fact." This section materially alters the common law in rela-
tion to the indictment and trial of accessories. But it was held
in *State* v. *Ricker*, 29 Maine, 84, in construing a similar statute
of the state of Maine, that the defendant must still be charged
in the indictment as an accessory and not as a principal.  And
on the other hand, we cannot suppose that the provision as to
punishment would apply to a case where the accessory is ex-
pressly made subject to a penalty less than that allotted to the
principal, as in *c.* 160, §§ 15 and 16.  The section makes a gen-
eral provision for the case of accessories before the fact to felo-
nies, which is made to some extent in other parts of the statutes
in regard to particular felonies, and for which there is a different
provision elsewhere in regard to others.  It is undoubtedly spe-
cially designed for the case of accessories to felonies before the
fact for which no other provision is specifically made; but we
see no reason why it is not applicable to all cases within
the scope of its terms, when not inconsistent with any other
statute.

A similar rule of construction may be applied to § 5, which
declares that " a person charged with the offence mentioned in
the preceding section "—that is, with the offence of counselling
hiring or otherwise procuring a felony to be committed — " may
be indicted, tried and punished in the same court and county
where the principal felon might be indicted and tried, although
the offence of counselling, hiring or procuring the commission

of such felony is committed on the high seas or on land within or without the limits of this state."

Applying the two sections to the case at bar, the result of the views we have expressed may be stated thus. Perjury is a felony by statute. Whoever procures any felony to be committed may be indicted and convicted of a substantive felony under § 5. Subornation of perjury, consisting in procuring the felony of perjury to be committed, has been made a substantive felony by Gen. Sts. *c.* 163, § 3. But making it a felony does not change the definition of the crime, or make it any the less subornation to procure the commission of perjury through the agency of another guilty party, any more than the general provision that one who procures a felony to be committed may be indicted for a substantive felony changes the definition of what will constitute an accessory. The 5th section makes any one who procures a felony to be committed liable to indictment and conviction in the county in this state in which the felony was actually committed, although the procurement was made without the limits of the state. It is equally applicable in its terms and in its reason to the case where the procurement is also made a substantive felony in some other chapter and section of the statutes. The defendant was charged in the indictment with procuring Northrup to commit the felony of perjury, and it was averred and proved that Northrup committed that felony in the county of Suffolk. The defendant might therefore be indicted and convicted in the same county, although he wrote the letter which incited and procured the perjury out of the state, and its contents were communicated to Northrup by an agent who participated in his guilty purpose. *Exceptions overruled.*

A new trial was subsequently granted in this case, in the superior court, by *Putnam,* J., for newly discovered evidence.